UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

Renee Kvek, individually and as a representative of a class of all others similarly situated and on behalf of the Cushman & Wakefield 401(k) Plan,

Plaintiff,

vs.

CUSHMAN & WAKEFIELD, U.S., INC., CUSHMAN & WAKEFIELD INVESTMENT COMMITTEE, and JOHN and JANE DOES 1-20,

Defendants.

No. 2:26-cv-00736-JHC

**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER**

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A. General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the

application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B. ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. Custodians. The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2. Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers, structured data), if any, likely to contain discoverable ESI. The parties will meet and confer regarding the search parameters and production format of data from structured data sources.

a. The following categories of non-custodial data sources are likely to contain discoverable ESI: (i) Cushman & Wakefield Investment Committee shared drives, SharePoint repositories, or other document management systems used to store Investment Committee materials; (ii) Plan administration and recordkeeping systems maintained by Cushman & Wakefield; (iii) enterprise email archive systems (e.g., Outlook archive, Exchange server); and (iv) centralized repository of Investment Committee meeting minutes, agenda materials, or investment review reports.

3. Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). The parties agree to take reasonable steps to preserve inaccessible data that is known to the preserving party and which is under the preserving party's custody or control until the parties meet and confer about whether such data shall be preserved.

5. Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

**C. ESI Discovery Procedures**

1. On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. Search methodology. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such

effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a. Prior to running searches:

i. The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party will provide hit reports including unique hit counts for each search query.

ii. After disclosure, the parties will engage in a meet and confer process regarding additional terms and sources sought by the non-producing party.

iii. The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or term. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

3. <u>Format.</u>

a. ESI will be produced to the requesting party as color image files named with the unique production number for the first page of the document or ESI in question followed by the file extension "JPG." with OPT load files containing the Bates number and file path. ESI

shall reflect full and complete information, including but not limited to: (1) Track changes and comments in Word Documents and PowerPoint notes shall be imaged so that such content is viewable on the images; (2) Bates numbers shall be branded to the imaged files (every page should have a unique Bates number); (3) the original Document orientation shall be retained; and (4) the file naming convention shall match Bates number of each page.

b. **Native Documents**: Unless otherwise agreed to by the parties, files that are not easily converted to image format will be produced in native format. The following file type shall be produced in native format, spreadsheet, database, drawing, and audio video media files. Furthermore, a Receiving Party may request that a particular Document that was not originally produced in Native Format be re-produced in Native Format, and such production will occur within five (5) business days of receipt of the request. All native files shall be named by the Bates Number of the first page of the associated Document and must retain the file extension corresponding to the original native format (e.g., an Excel 2003 spreadsheet's extension must be .xls). Each filename, including extension, must correspond to the NativePath Metadata field in its corresponding Document's row in the Load File, must be encoded in UTF-8, and should be placed in the natives/subdirectory.

c. **Image Files**: Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e. **Extracted text**: The parties shall produce their information in the following format: single- page images and associated multi-page text files containing extracted text or with appropriate software load files containing all information required by the litigation support system used by the receiving party. If Extracted Text is not available, or a document is redacted, OCR Text shall be provided.

f. The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

g. **Load File**: Each production shall include a .dat Metadata Load File, which is a delimited text file format. The first row of the file contains a list of Metadata columns. Each subsequent row contains the fielded Metadata for a single Document. Each column of each row contains one Metadata value, with values encapsulated by a special "quote" character and columns separated by a special "separator" character throughout.

- The Load File should use a thorn (þ, ASCII character 231) as a quote character and the special, non-printing character DC4 (ASCII character 20) as a separator;
- First line must contain the column/field names listed in Table 1 below;
- Each subsequent row must contain the Metadata for one Document;
- Every row must have the same number columns/fields (empty values are acceptable);
- Text must be encoded in either ASCII, UTF-8, or UTF-16; and

- The Load File should be placed in the Data folder of the production in the root directory.

4. De-duplication. The parties shall de-duplicate their ESI production across custodial and non-custodial data sources, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file. De-duplication shall be based on the MD5 or SHA-1 hash values of the native version of documents. The hash value will take into account the document's text and metadata. De-duplication shall be applied at a family level. Loose files shall not be deduplicated against email attachments. Hard Copy Documents shall not be eliminated as duplicates of ESI. No Party shall identify and/or eliminate electronic duplicates by manual review or any method other than by use of the technical comparison using MD5 or SHA-1 hash values as provided above.

5. Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy. Any emails or Documents which cannot be threaded must be reviewed in full with all responsive, non-privileged Documents being produced. If a party produces only the Inclusives, it shall populate the ThreadID field identifying the produced email's position and branch within that thread, the ThreadGroupID field identifying all emails belonging to the same overall email thread, and Inclusive field indicating that the produced email was identified as inclusive.

6. Metadata fields. If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; last author; recipient/to, cc and bcc; title/subject; email subject; file

name; file size; file extension; original file path; date and time created, sent, modified and/or received; parent bates; attach bates; ThreadID, ThreadGroupID, Inclusive (Y/N) and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

7. <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Hard-copy documents that contain affixed notes shall be scanned with the notes affixed, if it can be done so in a manner consistent with the other provisions in this agreement and it does not obstruct other content on the document. Each file will be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

8. <u>Document Families.</u> The relationship of documents in a document collection (e.g., cover letter and enclosures, E-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained in the same manner as the ordinary course of business using the parent bates and a attach bates fields of the Load File. Document Images generated from attachments to E-mails

stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent E-mail in their Bates Numbering. For example, for responsive E-mails with attachments, the Producing Party will produce all attachments. For a responsive Document that is an attachment to an E-mail, the E-mail will be produced. If a cover E-mail transmitting a responsive attachment or another Document in the family is entirely withheld as privileged, the withheld Document will be replaced with a slip sheet stating "Document Withheld as Privileged" as set forth below.

9. Structured Data.

a. To the extent that responsive plan data is maintained in a structured database or recordkeeping system (including systems maintained by Fidelity Investments), the parties shall meet and confer within 30 days of entry of this Order regarding the format in which such structured data will be extracted and produced, including any agreed upon field list and data dictionary.

b. Any data produced pursuant to this Section shall be subject to the protections of the Protective Order entered in this matter, to the extent it contains participant-level plan account information or other confidential data.

**D. Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and

archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. The following categories of ESI need not be preserved:

a. Deleted, slack, fragmented, or other data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

d. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

e. Back-up data that are duplicative of data that are more accessible elsewhere.

f. Server, system or network logs.

g. Nonresponsive data remaining from systems no longer in use that is unintelligible on the systems in use.

h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

4. <u>Third-Party Preservation.</u> Nothing in this Agreement shall be construed to confer upon Defendants any legal authority to compel preservation by third parties that is outside of Defendants' custody or control.

**E. Privilege**

1. A producing party shall create a privilege log of all documents fully withheld from production or redacted on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days after delivering a production, unless an earlier deadline is agreed to by the parties.

2. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

3. Redactions. To the extent that a responsive Document contains (a) privileged content, or (b) the types of personally identifiable information set forth in Fed. R. Civ. P. 5.2, the Producing Party may produce that Document in a redacted form.

a. Any privilege redactions shall be clearly indicated on the face of the Document with the redaction designation making clear the reason for the redaction (e.g., "Redacted - Privileged").

b. Spreadsheets (e.g., Microsoft Excel, Google Sheets) requiring redactions shall be produced with native redactions.

c. Personally-identifiable information shall be redacted with a black box.

d. Where a Document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material as provided herein and produce the responsive content.

e. A Document's status as redacted does not relieve the producing Party from providing all the metadata required herein unless the metadata withheld contains privileged content;.

f. All Documents containing a redaction, whether on an image or within a native Document, shall contain a "Yes" value in a Redacted field to be included in the DAT.

. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

6. Confidentiality Stipulation/ Protective Order Cross-Reference. The parties' proposed Protective Order (to be filed separately with the Court) governs the treatment of disclosure of privileged documents and confidential participant-level information. In the event of any conflict between this ESI Agreement and the Protective Order on privilege-related matters, the Protective Order shall control.

**G. Modification**

1. Any practice or procedure set forth herein may be varied by agreement between the parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of documents. Before seeking Court intervention, the parties shall meet and confer in good faith regarding any modification.

2. Nothing in this agreement waives the right of any party to petition the Court for an Order modifying the terms upon good cause shown, provided, however, that counsel for such party must first meet and confer with the counsel for the opposing party. The parties shall use reasonable best efforts to negotiate an exception from or modification to this agreement prior to seeking relief from the Court.

DATED: July 20, 2026

COHEN MILSTEIN SELLERS & TOLL PLLC

/s/ *Michelle C. Yau*
Michelle C. Yau (admitted *pro hac vice*)
Daniel R. Sutter (admitted *pro hac vice*)
1100 New York Avenue NW ● Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
myau@cohenmilstein.com
dsutter@cohenmilstein.com

Ryan A. Wheeler (admitted *pro hac vice*)
88 Pine Street ● 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
rwheeler@cohenmilstein.com

KELLER ROHRBACK
Erin Riley, WSBA #30401
1201 Third Avenue, Suite 3400
Seattle, WA 98101
(206) 623-1900
eriley@kellerrohrback.com

CLIENTEARTH USA, INC.
John S. Rossiter, Jr., WSBA No. 23876
Kimberly Blake (admitted *pro hac vice*)
Benjamin Segal (admitted *pro hac vice*)
501 Santa Monica Blvd., Suite 510
Santa Monica, CA 90401
Telephone: (310) 361-7006
jrossiter@clientearth.org
kblake@clientearth.org
bsegal@clientearth.org

*Attorneys for Plaintiff and the Proposed Class*

DATED: July 20, 2026

BYRNES KELLER CROMWELL LLP

/s/ Paul R. Taylor
Paul R. Taylor, WSBA #14851
Bradley S. Keller, WSBA #10665
BYRNES KELLER CROMWELL LLP1000
Second Avenue, Suite 3800
Seattle, WA 98104
(206) 622-2000

WILLKIE FARR & GALLAGHER LLP\

/s/ Craig Martin
Craig Martin (admitted *pro hac vice*)
Kimberly Jones (admitted *pro hac vice*)
Amanda Amert (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Dr.
Chicago, IL 60654
(312) 728-9000

*Counsel for Defendants*

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: July 20, 2026

John H. Chun
United States District Judge